UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**FRED V. EASON,**

       **Plaintiff,**

**v.**                                                            **Case No. 03-CV-812**

**JOHN E. POTTER,**
**Postmaster General, United**
**States Postal Service**

       **Defendant.**

---

## DECISION AND ORDER

---

The plaintiff, Fred Eason ("Eason"), filed a *pro se* complaint against John E. Potter ("Potter"), the Postmaster General, alleging violations of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act. Potter filed a motion for summary judgment, which is now pending before this Court.

### BACKGROUND

Eason, who is an African American male, works at the United States Postal Service ("USPS") as a part-time flexible clerk ("PTF"). (Defendant's Proposed Findings of Fact "DPFOF" ¶¶ 1-5.) On December 11, 2000, Eason's supervisor asked Eason to help shovel snow. (*Id*. at ¶¶ 10-11.) Eason rejected his supervisor's request, claiming that he was not

1

dressed properly for such a chore, and instead left work early without permission. (*Id.* at ¶ 12.) In response, the USPS issued a letter of warning ("LOW") to Eason about the incident, and told him that any further deficiencies would result in severe disciplinary action. (*Id.* at ¶ 13.) Eason filed a grievance with his union about the LOW, and on February 1, 2001, the grievance was settled. (*Id.* at ¶ 14.) The settlement agreement provided that if Eason did not receive similar discipline prior to June 11, 2001, then his LOW would be removed from his record and files. (*Id.* at ¶ 15.)

In February 2001, Eason applied for a promotion to become a part of the Associate Supervisor Program ("ASP"). (Compl. ¶ 1.) Both of Eason's supervisors gave Eason a negative evaluation because of the December 11, 2000 incident. (*Id.*) Thus, Eason's application for promotion was denied.

Again, in September 2001, Eason applied for the ASP program. (DPFOF ¶ 16.) Two supervisors filed evaluations of Eason in connection with his application to the ASP, namely Brian Dory ("Dory") and Larry Wills ("Wills"). Dory is a white male who was responsible for carrier operations. (*Id.* at ¶¶ 18-20.) Dory gave Eason a favorable evaluation. (*Id.* at ¶ 21.) However, Wills, who is an African American male, did not recommend Eason. (*Id.* at ¶¶ 6, 22.) Specifically, Wills cited the December 11, 2000 incident and five instances of Eason's tardiness. (*Id.* at ¶¶ 24, 33.)

Despite Wills' negative evaluation, Eason was admitted into the September 2001 ASP class. (*Id.* at ¶ 138.) The class was subsequently cancelled, though, because of budgetary

2

restrictions. (*Id*. at ¶ 139.)

On September 17, 2001, Eason received an administrative day in court to counsel him regarding his excessive tardiness. (*Id*. at ¶ 44.) On September 25, 2001, Eason's direct supervisor, Milton Hunter ("Hunter"), who is an African American male, issued Eason another LOW letter, claiming that Eason had come to work late on seven occasions the past four weeks. (*Id*. at ¶ 47.) Eason filed another administrative grievance, and in those proceedings, it was discovered that Eason was not scheduled to work on five of those seven days. (*Id*. at ¶¶ 49-50.) Accordingly, the LOW was reduced to an "official discussion." (*Id*. at ¶ 51.)

Eason also was denied certain vacation requests. For instance, on September 9, 2001, Eason requested annual leave for September 14, 2001. (*Id*. at ¶ 52.) The request was denied because it was allegedly not submitted in a timely fashion. (*Id*. at ¶¶ 52-54.) Also, Eason was denied a day off for November 16, 2001, because USPS claimed that he did not have any more annual leave available. (*Id*. at ¶ 56.)

On October 5, 2002, an employee in Eason's office decided not to use three days of his annual leave. (*Id*. at ¶¶ 84-87.) The employee returned the three days of annual leave, which allowed another employee to apply for those days off. (*Id*. at ¶ 84.) Eason requested two of those three days off, and while his request was initially denied, it was subsequently approved. (*Id*. at ¶¶ 88, 89). Accordingly, Eason was able to take off October 30 and 31, 2002. (*Id*.)

Shortly thereafter, Eason requested leave for November 18 to 24, 2002. (*Id.* at ¶ 90.) He was denied this request, and was notified that an employee who was transferring to their post office was receiving those days off instead. (*Id.* at ¶ 91.) Eason filed a grievance with his union over the matter. (*Id.* at ¶ 92.) Hunter met with a union steward on November 15, 2002, regarding Eason's request, but Eason later cancelled his leave request before Hunter and the union could reach a settlement. (*Id.* at ¶ 94.)

Eason requested to be transferred from the Thiensville Post Office to the Milwaukee Post Office. (*Id.* at ¶ 106.) In connection with Eason's application for a transfer, Hunter submitted an evaluation reviewing Eason's work habits, attitude and personality while working in the Thiensville office. (*Id.* at ¶ 107.) Hunter indicated in his evaluation that Eason's work habits were poor because he failed to apply a sense of urgency to his work. (*Id.* at ¶ 124, 177.) Hunter's evaluation also mentioned that Eason had filed Equal Employment Opportunity ("EEO") complaints and grievances. (*Id.* at ¶ 125.) The Senior Plant Manager, Elizabeth Brown ("Brown"), who is an African American female, reviewed Eason's records. (*Id.* at ¶ 103-105.) On July 12, 2002, Brown denied Eason's transfer request due to Eason's unsatisfactory evaluation and attendance record. (*Id.* at 128, 176-78.)

In October 2001, Eason submitted a document to the USPS from a doctor indicating that, for medical reasons, Eason was limited to working no longer than 10 hours a day and six days a week. (*Id.* at ¶¶ 65-67.) While the USPS initially complied with Eason's request, in April 2002, Hunter stopped scheduling a day off every week for Eason. (Amended Compl.

4

¶ 3.)

Eason contacted an Equal Employment Opportunity ("EEO") Counselor on two occasions about the alleged adverse employment actions he suffered, and he also filed two complaints with the EEOC. He contacted an EEO Counselor on September 11, 2001, and December 19, 2002. (DPFOF ¶¶ 68, 73.) He filed EEO complaints on November 8, 2001, and February 19, 2003. (*Id.* at ¶ 69, 74.) The EEOC investigated allegations of racial discrimination, disability discrimination, and retaliation. (*Id.* at ¶ 82.) Eason's allegation of a hostile work environment was not accepted for review because the EEOC found that Eason did not timely contact an EEO counselor to bring such a claim. (*Id.* at ¶ 83.) On April 19, 2004, Eason filed a complaint in this Court, alleging numerous violations of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act.

### STANDARD OF REVIEW

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

5

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

I.    Exhaustion of Administrative Remedies

Prior to instituting suit under Title VII or the Rehabilitation Act, a federal employee must first proceed before the agency charged with discrimination. 42 U.S.C. § 2000e-16(c). An employee must contact an EEO Counselor at his employing agency "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Eason first

6

contacted an EEO Counselor on September 11, 2001. Thus, his allegation of racial discrimination on December 11, 2000, when he refused to shovel snow, and his claim of retaliation which allegedly occurred in February 2001, when he was first denied his request for a promotion, are time barred. Accordingly, his claims for relief based on those two incidents are dismissed.

II.     Eason's Claim Under the Rehabilitation Act

The Rehabilitation Act prohibits discrimination on the basis of one's disability in any program receiving federal financial assistance. 29 U.S.C. § 794(a). To make out a prima facie case under the Act, a plaintiff must show that he "suffers from a disability as defined under the Act; that he was otherwise qualified for the job; that he was involved in programs receiving federal financial assistance; and that he was excluded from participation, denied benefits, or otherwise discriminated against solely because of his disability." *Silk v. City of Chicago*, 194 F.3d 788, 798 n. 6 (7th Cir. 1999) (internal quotations omitted).

The problem with Eason's claim is that he has not presented evidence demonstrating that he is an "individual with a disability" within the meaning of the Act. The Rehabilitation Act defines an "individual with a disability" as "any person who (I) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). "Major life activities" are those activities that are of central importance to daily life, such as "caring for one's self, performing manual tasks, walking, seeing,

7

hearing, speaking, breathing, learning, and working." *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002) (quoting 29 C.F.R. § 1630.2(I)). Furthermore, the impairment must be "permanent or long term." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).

Eason has not identified his alleged disability, other than saying that he is limited to working no more than a ten hour shift and no more than six days a week. A medical condition that limits a person to working sixty hours a week does not substantially impair that person's ability to work. *See Kellog v. Union Pacific R.R. Co.*, 233 F.3d 1083, 1087 (8th Cir. 2000) ("An employee is not substantially limited in the major life activity of working by virtue of being limited to a forty-hour work week.") Accordingly, Eason's claim under the Rehabilitation Act must be dismissed.

III.     Eason Suffered No Adverse Employment Action

Eason claims that Wills' evaluation of Eason not recommending him for the ASP program was a form of retaliation and racial discrimination. Eason's allegation, though, is clearly without merit. Eason was admitted into the September 2001 ASP class, despite Wills' evaluation, so Eason suffered no adverse employment action. *See Johnson v. Cambridge*, 325 F.3d 892, 900-901 (7th Cir. 2003). An "adverse employment action" occurs when there is "a significant change in employment status, such as a hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Here,

8

Eason was admitted to the class he sought to join. While the class was subsequently cancelled for budgetary reasons, such a decision was hardly discriminatory towards Eason because everyone in the class was affected by the cancellation. Eason's harassment and discrimination claim regarding his September 2001 application to the ASP must be dismissed.

Similarly, Eason has not shown that the other negative evaluations, denials of his vacation requests, and the denial of his transfer request are adverse employment actions. First, it is well established that negative employment evaluations alone do not constitute adverse employment actions. *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). Second, the denial of Eason's vacation requests also was not a significant change in his job status. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). And finally, Eason provides no evidence that he would have received more pay or different duties in the Milwaukee Post Office, so the denial of his transfer did not create a Title VII claim. *See O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004) ("being shifted to an essentially equivalent job that [an employee] does not happen to like as much does not a Title VII claim create.") (quoting *Place v. Abbott Labs.*, 215 F.3d 803, 810 (7th Cir. 2000)).

"Mere unhappiness and inconvenience are not actionable under Title VII." *Mlynczak v. Bodman*, 442 F.3d 1050, 1061 (7th Cir. 2006). Eason never suffered a significant change in his employment status, so all of his individual claims under Title VII must be dismissed.

IV.     Eason's Harassment Claim

Despite the foregoing, Eason argues that when considering all of the instances of which he complains together there is a question of material fact as to whether Potter is liable for a creating a hostile work environment. Under Title VII, in order for a claimant to establish a *prima facie* case alleging a hostile work environment, he must demonstrate that he was harassed because of his race by a co-worker or a supervisor. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002). Furthermore, the alleged harassment must be so severe and pervasive as to alter the conditions of employment and create an abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998).

The events at issue are not so severe or pervasive that it created a racially hostile work environment. A hostile work environment must be both objectively and subjectively offensive. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). To determine whether an environment is objectively hostile or offensive, the Court must consider all the circumstances, including frequency and severity of the conduct, whether it is threatening, and whether it unreasonably interferes with an employee's work performance. *See McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004). The conduct in question here fails to satisfy this objective test, as they are isolated events that are not threatening and humiliating. In addition, none of the incidents of which Eason complains are sufficiently connected to race to support his hostile work environment claim. *See Luckie*, 389 F.3d at 713. His allegation of harassment does not conform to the traditional hostile work environment claim in that he does not allege that he was the target of any racial slurs,

10

epithets, or other overtly race-related behavior. *Id*. Indeed, his two supervisors, Hunter and Wills, are of the same race as Eason. Accordingly, Eason's hostile work environment claim likewise must be dismissed.[1]

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Potter's Motion for Summary Judgment (Docket No. 25) is **GRANTED**.

The clerk is directed to close this case and enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of September, 2006.

**BY THE COURT**

s/ Rudolph T. Randa_____
**Hon. Rudolph T. Randa
Chief Judge**

---

[1] Eason also alleged in his complaint a violation of Wisconsin's "Six Hour Lunch Rule." This Court has supplemental jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Whether or not Eason worked more than six hours before he was given a lunch break is not so related to his other claims so as to form part of the same case or controversy. Even if it was so related, this Court still would dismiss his state law claim for lack of jurisdiction because all of his federal claims have been dismissed. 28 U.S.C. § 1367(c)(3).

11